IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:24-CV-00529-M

**Tasha Owens**,

    Plaintiff,

v.

**Frank J. Bisignano,** Commissioner of Social Security,[1]

    Defendant.

**Memorandum & Recommendation**

  Plaintiff Tasha Owens challenges an Administrative Law Judge's decision to deny her application for social security income. Owens claims that the ALJ erred in reaching that determination by wrongly configuring her residual functional capacity (RFC).[2] Both Owens and Defendant Frank Bisignano, Commissioner of Social Security, seek a decision in their favor. D.E. 13, 16, 17.

  After reviewing the parties' arguments, the undersigned concludes that the ALJ made the appropriate determination. In determining the RFC, the ALJ sufficiently explained why Owens's severe shoulder impairment required no limitations on her ability to reach. The undersigned thus

---

[1] The court substitutes Frank J. Bisignano for the former defendants. *See* Fed. R. Civ. P 25(d).

[2] Owens raises, but does not address, an argument that the ALJ failed to investigate the reasons she did not pursue additional treatment. *See* D.E. 13 at 3. The undersigned deems this issue waived. *See Grayson O Co.* v. *Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017) ("A party waives an argument by failing to present it in its opening brief or by failing to 'develop [its] argument'—even if [its] brief takes a passing shot at the issue.") (quoting *Brown* v. *Nucor Corp.*, 785 F.3d 895, 923 (4th Cir. 2015)).

recommends that the court grant Bisignano relief, deny Owens relief, and affirm the Commissioner's decision.[3]

I. Background

   A.   Factual[4]

Owens had a history of left knee arthralgia. Tr. at 28. In August 2020, providers noted normal range of motion. *Id.* She again exhibited normal range of motion in all joints, along with full strength and sensation, at an appointment six months later. *Id.* And in a July 2021 visit, Owens's left knee was swollen but she could still move both legs without limitation. *Id.* Owens reported pain and swelling in her left knee at an orthopedic appointment later that month. *Id.* On examination, she displayed full strength, a steady gait, and no indications of instability. *Id.*

Owens started physical therapy. *Id.* Her initial evaluation noted slightly reduced strength in her left leg and an antalgic gait. *Id.* But she had a non-antalgic gait at a follow-up visit the next month. *Id.*

At an August 2021 return visit to her orthopedist, Owens reported improvement in her pain, although she had trouble performing daily activities. *Id.* An exam showed a normal gait, full strength and sensation in her lower extremities, and no pain with range of motion movements. *Id.* A month later, Owens denied much improvement from physical therapy. *Id.* Her gait, strength, and range of motion were normal. *Id.* An MRI revealed osteoarthritis in her left knee, which she treated with pain medication. *Id.*

---

[3] This matter has been referred to the undersigned for entry of a Memorandum and Recommendation. 28 U.S.C. § 636(b). D.E. 19.

[4] Owens focuses her arguments on her physical impairments, and specifically her shoulder, so the undersigned will limit the recapitulation of the medical evidence to those conditions and symptoms.

X-rays in January 2022 showed bone on bone arthritis in her left hip. Tr. at 29. Her orthopedist encouraged Owens to lose weight before considering surgery. *Id.* She received an injection. *Id.* The next month, Owens reported short-term pain relief from the injection. *Id.* She displayed tenderness but retained full strength in the hip area and walked without difficulty. *Id.*

Because she experienced pain and reduced movement, Owens had her left shoulder x-rayed in July 2022. *Id.* It showed AC joint arthrosis. *Id.* But providers noted no swelling or reduced strength on exam. *Id.* She participated in physical therapy for arthritis in her upper and lower extremities. *Id.*

At a return appointment three months later, Owens again reported lower left extremity pain that interfered with her daily activities. *Id.* She had an antalgic gait and used a cane, but there was no edema in her extremities. *Id.* Providers prescribed medication and sent her for a femoral nerve block. *Id.*

Later that month, Owens remarked that her pain had improved with medication. *Id.* Two months later, she claimed that her left hip pain made walking difficult. *Id.*

An August 2023 MRI of her left hip showed osteoarthritis and subtle avascular necrosis. *Id.* Owens walked with a limp and displayed reduced range on motion in her bilateral lower extremities when she saw her primary care provider one month later. Tr. at 30. But she had no deficits in strength or sensation. *Id.* And Owens reported favorable results from her pain medications. *Id.*

State agency physicians found that Owens could perform light work with limitations on postural activities and environmental exposure. Tr. at 31. And they limited her to standing or walking for four hours in an eight-hour workday. *Id.*

Her orthopedist, Dr. Gregory Tayrose, opined that Owens could occasionally stand and walk because of her hip pain and obesity. Tr. at 29. And despite improvement following surgery for carpal tunnel syndrome, she could only occasionally engage in handling, typing, and manipulations. Tr. at 29, 32, 1525.

On a prior disability application, an ALJ concluded that Owens's hypertension, plantar fasciitis, and obesity were severe impairments. Tr. at 32. The ALJ determined that she could perform light work with occasional postural movements. *Id.*

Owens testified that her lower limb arthritis limited her ability to sit, stand, and walk. Tr. at 28. She treated her pain with heat, physical therapy, and medication, without attaining significant relief. *Id.* Owens estimated that she could stand for five minutes, walk for four minutes, and sit up to 20 minutes. *Id.*

Owens also discussed issues with hand pain because of swelling in her fingers. *Id.* And she has trouble concentrating, interacting with others, and tolerating stress. *Id.* Her daily activities are sedentary, and she relies on others to assist with chores. *Id.*

**B.    Procedural**

In October 2022, Owens applied for disability benefits and supplemental security income. In both applications, she alleged a disability that began in March 2020. After the Social Security Administration denied her claim at the initial level and upon reconsideration, Owens appeared for a telephonic hearing before an ALJ to determine whether she was entitled to benefits. The ALJ determined Owens had no right to benefits because she was not disabled. Tr. at 22–35.

The ALJ found that Owens lived with several severe impairments. Among these were left hip osteoarthritis, avascular necrosis, cervical spondylosis, tendinopathy of the patellar tendon, patellofemoral and medical compartment osteoarthritis, tenosynovitis, acromioclavicular joint

4

arthrosis, obesity, major depressive disorder, and generalized anxiety disorder. Tr. at 24–25. The ALJ also found that Owens's impairments, either alone or in combination, did not meet or equal a Listing impairment. Tr. at 25.

Next, the ALJ determined that Owens had the residual functional capacity (RFC) to perform light work with some limitations. Tr. at 27. She can stand and walk up to four hours in an eight-hour workday. *Id.* Owens can occasionally climb, stoop, kneel, crouch, and crawl. *Id.* And she can have occasional exposure to hazards. *Id*.

Owens can understand, remember, and carry out simple instructions. *Id.* And she can sustain concentration, persistence, and pace in two-hour increments. *Id*.

Then the ALJ concluded that Owens could not perform her past work as a retail sales associate. Tr. at 33. But considering her age, education, work experience, and RFC, the ALJ determined that she could perform other jobs that existed in significant numbers in the national economy. Tr. at 33–34. These positions included information clerk, cashier, and office helper. *Id.* These findings led the ALJ to conclude that Owens was not disabled. Tr. at 34.

After the Appeals Council denied review, Owens commenced this action in September 2024. D.E. 1. Both parties ask the court to issue a decision in their favor. D.E. 13, 16, 17.

**II.     Analysis**

Owens claims that the ALJ erred in determining her residual functional capacity because it includes no manipulative restrictions, despite her severe shoulder impairment. The Commissioner contends that the record supports the RFC determination and a finding that no limitations on manipulations were necessary. The undersigned concludes that Owens has failed to show that her shoulder impairment warrants greater limitations that those reflected in the RFC determination's restriction to light work and the associated lifting and carrying limits it entails.

Failing to establish error in the RFC, Owens has not stated a basis for remand. So the court should reject her claim and affirm the Commissioner's decision.

A. **Standard for Review of the Commissioner's Final Decision**

When a claimant appeals the Commissioner's final decision, the district court considers whether, based on the entire administrative record, there is substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson* v. *Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Shively* v. *Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws* v. *Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). The court must affirm the Commissioner's decision if it is supported by substantial evidence. *Smith* v. *Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

B. **Standard for Evaluating Disability**

Under the Social Security Act, a claimant is disabled if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). ALJs use a five-step, sequential process when considering disability claims. 20 C.F.R. § 404.1520.

First, at step one, the ALJ considers whether the claimant is engaged in substantial gainful activity. *Id.* § 404.1520(a)(4)(i). If so, the claim is denied. *Id*.

Then, at step two, the ALJ looks at whether the claimant has a severe impairment or combination of impairments that significantly limit him from performing basic work activities. *Id.* § 404.1520(a)(4)(ii). If not, the claim is denied. *Id*.

Next, at step three, the ALJ compares the claimant's impairments to those in the Listing of Impairments. *Id.* § 404.1520(a)(4)(iii). If the impairment appears in the Listing or if it is equal to a listed impairment, the ALJ must find that the claimant is disabled. *Id.*

But if the ALJ concludes that a presumption of disability is not warranted, the ALJ must then assess the claimant's residual functional capacity ("RFC"). A claimant's RFC "is the most work-related activity the claimant can do despite all of her medically determinable impairments and the limitations they cause." *Arakas* v. *Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 90 (4th Cir. 2020). Determining the RFC requires the ALJ to "first identify the claimant's 'functional limitations or restrictions' and assess the claimant's 'ability to do sustained work-related' activities 'on a regular and continuing basis'—i.e., '8 hours a day, for 5 days a week, or an equivalent work schedule.'" *Id.* (quoting SSR 96–8p, 1996 WL 374184, at *1 (July 2, 1996)). The ALJ will then "express the claimant's Residual Functional Capacity 'in terms of the exertional levels of work[:] sedentary, light, medium, heavy, and very heavy.'" *Id.* (alteration in original).

After assessing the claimant's RFC, the ALJ, at step four, considers whether the claimant can perform his past work despite his impairments. *Id.* § 404.1520(a)(4)(iv). If the claimant can, the ALJ will deny the claim. *Id.* If the claimant cannot, the analysis moves on to step five.

This final step considers whether the claimant, based on his age, work experience, and RFC, can perform other substantial gainful work. *Id.* § 404.1520(a)(4)(v). If so, the claimant is not disabled; if so, they are considered disabled. *Id*.

The burden of proof shifts between the Commissioner and the claimant during the evaluation process. The claimant has the burden of proof on the first four steps, but the Commissioner bears it on the last one. *Pass* v. *Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

7

## C. Residual Functional Capacity

Owens argues that the ALJ erred in determining her residual functional capacity because it included no manipulative restrictions to account for her severe shoulder impairment. The Commissioner contends that the evidence required no manipulative limitations. The undersigned finds no error in the ALJ's RFC determination.

The RFC is a determination, based on all the relevant medical and non-medical evidence, of what a claimant can still do despite her impairments; the assessment of a claimant's RFC is the responsibility of the ALJ. *See* 20 C.F.R. §§ 404.1520, 404.1545, 404.1546; SSR 96–8p, 1996 WL 374184, at *2. If more than one impairment is present, the ALJ must consider all medically determinable impairments, including medically determinable impairments that are not "severe," when determining the claimant's RFC. *Id.* §§ 404.1545(a), 416.945(a). The ALJ must also consider the combined effect of all impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. *Id.* § 404.1523; *see Walker* v. *Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) ("[I]n evaluating the effect[] of various impairments upon a disability benefit claimant, the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them.").

The ALJ must provide "findings and determinations sufficiently articulated to permit meaningful judicial review." *DeLoatche* v. *Heckler*, 715 F.2d 148, 150 (4th Cir. 1983); *see also Wyatt* v. *Bowen*, 887 F.2d 1082, 1989 WL 117940, at *4 (4th Cir. 1989) (per curiam). The ALJ's RFC determination "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Mascio* v. *Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting SSR 96–8p). Furthermore, "[t]he record should include a discussion of which evidence the ALJ

found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Radford* v. *Colvin*, 734 F.3d 288, 295 (4th Cir. 2013). Fourth Circuit precedent "makes it clear that it is not [the court's] role to speculate as to how the ALJ applied the law to [her] findings or to hypothesize the ALJ's justifications that would perhaps find support in the record. *Fox* v. *Colvin*, 632 F. App'x 750, 755 (4th Cir. 2015).

Social Security Ruling 96–8p explains how adjudicators should assess residual functional capacity. The Ruling instructs that the residual functional capacity "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions" listed in the regulations. "Only after that may [residual functional capacity] be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96–8p. The Ruling further explains that the residual functional capacity "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.*

There is no "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis[.]" *Mascio*, 780 F.3d at 636. But "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (quoting *Cichocki* v. *Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)). The function-by-function requirement can be satisfied by reference to a properly conducted analysis by a state agency consultant. *See, e.g.*, *Linares* v. *Colvin*, No. 5:14-CV-00129, 2015 WL 4389533, at *3 (W.D.N.C. July 17, 2015) ("Because the ALJ based his RFC finding, in part, on the function-by-function analysis of the State agency consultant, the ALJ's function-by-function analysis

complied with [Soc. Sec. Ruling] 96–8p." (citing *Lemken* v. *Astrue*, No. 5:07-CV-33, 2010 WL 5057130, at *8 (W.D.N.C. July 26, 2010))).

The ALJ found that Owens could perform a reduced range of light work. Tr. at 27. She limited Owens to standing or walking for four hours. *Id.* And the ALJ incorporated limitations on postural activities, environmental exposure, and non-exertional functions. *Id.*

Owens contends the ALJ did not reconcile the determination that she had a severe shoulder impairment with the RFC, which includes no manipulative restrictions to address this condition. And she faults the ALJ for offering no explanation why she omitted manipulative limitations.

To support her argument, Owens points to her testimony that her left shoulder "hurts periodically" and sometimes swells. Tr. at 61. It would bother Owens sometimes when she would reach up when washing or lifting her hand to put on clothes. Tr. at 61–62. And her orthopedist opined that Owens could type, handle, and manipulate only occasionally. Tr. at 1525.

The Commissioner points out the evidence does not require additional restrictions to address her left shoulder arthritis. First, the ALJ declined to fully accept Owens's subjective statements. Tr. at 28. And the record supports a conclusion that the evidence, at times, undermined her allegations.

Some treatment records reflect tenderness, an antalgic gait, and reduced range of motion in her lower extremity and left shoulder. Tr. at 29–30. But records also show that on several occasions Owens had a normal gait, full strength, intact sensation, and full range of motion. Tr. at 28–30.

At her physical therapy sessions, Owens rated her should pain as three or four out of ten in intensity. Tr. at 489, 491, 493. Owens testified that she sometimes experienced pain and swelling

10

in her left shoulder. Tr. at 61. And Owens reported improvement in her pain symptoms with medications. Tr. at 29, 30, 1277, 1292, 1352, 1381, 1531.

Second, the ALJ found the orthopedist's opinion unpersuasive. Tr. at 32. In assigning limitations, the orthopedist noted Owens had "severe carpal tunnel problem that was improved by surgery" but it remained at a level that prevented more than "occasional handling, manipulating, or typing." Tr. at 1525. Notably, he did not limit Owens's ability to lift or reach. *Id.*

Yet the ALJ determined that Owens's bilateral wrist carpal tunnel syndrome was not a severe impairment. Tr. at 25. She pointed out that Owens had undergone corrective surgery, which had improved this condition. Tr. at 25, 32. And Owens had no significant deficits in strength or sensation in her upper extremities. *Id.* The records corroborate Owens's reports of improvement in her CTS following surgery. Tr. at 1221, 1224, 1244.

Third, the record contains little evidence of symptoms and limitations related to her left shoulder. In July 2022, Owens reported pain and reduced movement in her left shoulder, and an x-ray showed arthrosis. Tr. at 29. But an examination found no swelling or loss of strength. *Id.* Later records focused on Owens's reports of pain in her left hip, knee, and foot, with little, if any, complaints about her shoulder. Tr. at 29–30. This diminishes the severity she claims. *See Terry M. v. O'Malley*, No. 1:23-CV-4764, 2024 WL 1334050, at *13 (D.S.C. Mar. 7, 2024) (upholding ALJ's conclusion that found claimant's allegations about the intensity, persistence, and limiting effects of daily panic attacks lasting up to an hour conflicted with the because she did not regularly report them to providers), *adopted by* 2024 WL 1333349 (D.S.C. Mar. 28, 2024); *Steven H. v. Kijakazi*, No. 7:20-CV-506, 2022 WL 329201, at *9 (W.D. Va. Feb. 3, 2022) (affirming ALJ's decision where he discounted claimant's statement of constant wrist pain because, among other reasons, he did not complain about it to a medical provider); *Connie J. v. Comm'r of Soc. Sec.*,

11

No. 4:18-CV-00059, 2020 WL 2814181, at *12 (W.D. Va. May 14, 2020), *adopted by* 2020 WL 2812831 (W.D. Va. May 29, 2020) (determining that ALJ properly explained her assessment of claimant's statements as inconsistent with the evidence where the record showed limited complaints or abnormalities); *Fluellen* v. *Colvin*, No. 4:14-CV-30, 2015 WL 2238997, at *4 (W.D. Va. May 12, 2015) (finding that the claimant's failure to report relevant symptoms to providers created inconsistencies supporting a conclusion that she was not as limited as she claimed).

Owens's Function Report noted finger pain and trouble using her hands. Tr. at 292, 293, 297, 298. But she referenced no shoulder issues and identified no limitations with reaching. Tr. at 292–98.

What's more, light work involves occasionally lifting and carrying no more than 20 pounds and frequently lifting and carrying less than ten pounds. 20 C.F.R. §§ 404.1567(b), 416.967(b); SSR 83–10. So limiting Owens to light work arguably may account for any difficulty caused by AC joint arthrosis.[5]

In sum, the ALJ recognized Owens's shoulder condition but found it less limiting that Owens alleged. And the evidence supports that conclusion.

Owens has failed to establish that the ALJ erred in determining her RFC by failing to include additional restrictions limiting her manipulations. So the court should reject Owens's claim on this issue.

---

[5] The three jobs identified at step five involve frequent handling, fingering, feeling, and reaching. Tr. at 68. Even if the evidence showed some manipulative restrictions, jobs with no more than frequent manipulations are not necessarily inconsistent with her AC joint arthrosis symptoms.

## III. Conclusion

For these reasons, the undersigned recommends that the court grant Bisignano's request for relief (D.E. 16), deny Owens's request for relief (D.E. 13), and affirm the Commissioner's determination.

The Clerk of Court must serve a copy of this Memorandum and Recommendation (M&R) on each party who has appeared in this action. Any party may file a written objection to the M&R within 14 days from the date the Clerk serves it on them. The objection must specifically note the portion of the M&R that the party objects to and the reasons for their objection. Any other party may respond to the objection within 14 days from the date the objecting party serves it on them. The district judge will review the objection and make their own determination about the matter that is the subject of the objection. If a party does not file a timely written objection, the party will have forfeited their ability to have the M&R (or a later decision based on the M&R) reviewed by the Court of Appeals.

Dated: January 15, 2026

_Robert T. Numbers II_
Robert T. Numbers, II
United States Magistrate Judge